## THE STATE v. JESS BLANCHARD, ROBERT GOODING, A. J. CRABTREE and FLOYD BROWN, Appellants.—33 S. W. (2d) 937.

Division Two, December 20, 1930.

*Fred W. Coon, Harold E. Marshall* and *Walter A. Raymond* for appellants.

*Stratton Shartel,* Attorney-General, and *Ray Weightman,* Assistant Attorney-General for respondent.

WHITE, J.—An indictment was returned by the grand jury in the Circuit Court of Jackson County charging the defendants with setting up and keeping gambling devices, in violation of Section 3537, Revised Statutes 1919. On the trial, April 11, 1929, the defendants were found guilty, each by a separate verdict, and punishment

assessed against each at six months' imprisonment in the county jail. All the defendants appealed.

I. The verdicts were returned April 11, 1929, and the record shows defendants filed their motion for new trial April 17, 1929. April 11th was Thursday, and April 17th was the Wednesday following. Thus the motion was filed out of time. The record must show affirmatively that the motion for new trial was filed in time. [St. Louis v. Boyce, 130 Mo. 572; City of St. Louis v. Glennon, 229 S. W. 205; Bollinger v. Carrier, 79 Mo. 318; State ex rel. v. Sanford, 181 Mo. 134, l. c. 136; State v. Brown, 206 Mo. l. c. 506.]

The rule governing the time of filing such motion is the same in criminal cases as it is in civil cases. [State v. Fawcett, 212 Mo. l. c. 737.] Section 4079 as amended by the Act of 1925 (Laws 1925, p. 198), provides that for good cause shown the court may extend the time for filing a motion for new trial.

Both the record proper and the bill of exceptions affirmatively show the motion was filed out of time. There would have to be a record of equal verity showing such extension, which could not be presumed from the fact that the court considered and overruled the motion. It was said in the Brown case, supra, l. c. 507:

"It is true that the trial judge heard and considered the motion for new trial just as if it had been duly filed, and then overruled it, which he had no power to do, the motion not having been filed in term time."

We are unable to consider the bill of exceptions. Although it appears from the briefs that the only point relied upon is the failure of the State to make out a case, and it seems from the argument the evidence supports the allegations of the indictment.

II. It is claimed further, and argued at length, that the indictment is insufficient. It is as follows, omitting caption and signatures:

"The Grand Jurors for the State of Missouri, duly summoned from the body of said County of Jackson, being duly impaneled, sworn and charged to inquire within and for said county, upon their oaths present and charge that Jess Blanchard, Robert Gooding, A. J. Crabtree and Floyd B. Brown whose christian names in full are to the said Grand Jury unknown, on the 12th day of October, 1928, at the County of Jackson and State of Missouri, did then and there unlawfully and feloniously set up and keep certain gambling tables and gambling devices, to-wit: one crap table commonly so-called, upon which dice were thrown and used, and one Black-jack table,

upon which cards, money and chips were used, which said gambling devices were adapted, devised and designed for the purpose of playing games of chance for money and property, did then and there unlawfully and feloniously entice and permit divers persons, whose names are to the said Grand Jurors unknown, to bet and play at and upon and by means of the said gambling tables and gambling devices, against the peace and dignity of the State.''

It is claimed that the indictment does not aver that the defendants set up the dice, cards and chips which constituted the gambling devices mentioned in the indictment.

The allegation is that the defendants did ''feloniously set up and keep *certain gambling tables and gambling devices, to-wit*:

''One crap table, commonly so called, upon which dice were thrown and used, and one Black-jack table, upon which cards, money and chips were used, which said gambling devices were adopted, devised and designed for the purpose of playing games of chance, etc.''

The only defect claimed in these averments was that the defendant only set up and kept the crap table and the black-jack table, which were not necessarily gambling devices. The tables were only part of the devices mentioned. The defendants set up and kept the *gambling devices* (plural), one crap table upon which were used other devices mentioned. Then follows ''which said *gambling devices*'' (plural), ''were adapted, devised and designed,'' etc. That means the gambling devices which the defendants were alleged to have set up. It is a strained construction to say that the defendants would not understand that they were charged with setting up and keeping all the gambling devices mentioned, dice, cards, and chips, as well as the tables. No juror could understand that the defendants only set up the tables. The device consisted of the table and the dice used upon it, and the black-jack table and the cards, chips and money used upon it. If the averments lacked the certainty and precision of form which would satisfy the defendants their remedy was to attack it before the trial by motion or otherwise. There was no objection to it. They went to trial upon it as it read as if fully informed of the nature and cause of the accusation.

A number of cases considering this Section 3537 are cited, some of them holding informations insufficient and others holding them sufficient. The reasoning in those cases is such as might give rise to the claim of hair-splitting distinctions, but each of the cases is based upon solid ground as to the exact meaning and import of the word used. Cases somewhat similar to this are State v. Greer, 6 S. W. (2d) l. c. 842; State v. Williams, 273 S. W. 1069. In each of those the information was held sufficient.

Appellants rely upon State v. Morris, 272 Mo. 522, and State v. West, 11 S. W. (2d) 1031, which follows the Morris case. In the

Morris case the indictment averred only that the defendant set up and kept a gambling device, to-wit, a poker table. There was no allegation as to how or in what way the poker table was designed to serve the purpose of a gambling device. It was pointed out that one table probably would serve as well as another, upon which to play poker. The indictment averred that upon said table packs of cards and poker chips were used, but does not aver that the defendant set up the cards and poker chips or placed them there; they may have been brought by the customers. It was further noted that Section 3537 (then Sec. 4750, R. S. 1909) was not intended to prohibit gambling in any place. That was covered by another section which made it a felony for one to permit gambling on his premises. Section 3537 is directed only at setting up the devices. The opinion in the Morris case stated in what way a good indictment could be framed to cover the particular offense attempted to be charged there. The indictment in this case substantially meets that suggestion. There is no reasonable construction of the indictment by which it would not allege that the defendants set up the gambling devices described, the crap table and the dice, the black-jack table and the cards and chips.

The judgment accordingly is affirmed. All concur.