STATE OF MISSOURI, RESPONDENT, v. G. W. JONES, APPELLANT.—164 S. W. (2d) 85.

Springfield Court of Appeals. July 27, 1942.

Rehearing denied August 24, 1942.

O. J. Page, Melvin A. Rogers and Milton Kirby for appellant.

716

*William R. Collison* for respondent.

FULBRIGHT, J.—The defendant was charged by information under Section 9988, R. S. Mo., 1939, in the Circuit Court of Greene County, with having practiced medicine and surgery upon the person of Mrs. I. U. Gordon, without a license from the State Board of Health. Upon a trial to a jury he was convicted and his punishment assessed at a fine of $500 and twelve months in the county jail. From this judgment he duly appeals.

It was admitted that the defendant was a licensed practitioner as a Chiropractor by the State Board of Chiropractors. To sustain the charge the State made positive proof that the defendant had prescribed medicine, both pills (which were unidentified as to their nature), and a liquid, identified as extract of urgot, in the treatment of Mrs. Gordon, and that he used a surgical instrument upon her person. An examination by another doctor showed the physical condition of Mrs. Gordon after the treatment and use of the surgical instrument by defendant. It further showed that upon discovery of the fact that his patient had gone to another doctor defendant offered her $1,000 for a release and return of the medicine he had prescribed.

The evidence on the part of defendant is in sharp conflict with that of the State, especially as to the prescription or administration of

medicine and the use of surgical instruments. His testimony, with some corroboration, tends to show that he had no surgical instruments; that he did not operate on, treat or prescribe medicine for Mrs. I. U. Gordon or any other person at any time; that he did not offer $1,000 for a release and return of the medicine prescribed. But, on the contrary, testified that Mrs. Gordon and her husband both demanded of him, under threat, that if he did not make things satisfactory she would appear before the Grand Jury and have him arrested.

It is insisted that the information is defective in that it "failed to inform the defendant what surgical instrument or instruments were used in performing the operation and what medicine or medicines were prescribed to enable the defendant to properly prepare for his defense." The information, omitting caption and signature, follows:

"F. Hiram McLaughlin, Prosecuting Attorney within and for the County of Greene, in the State of Missouri, under his oath of office informs the Court that G. W. Jones, late of the County and State aforesaid, on the 2nd day of October, A. D., 1939, at the County of Greene and State of Missouri, not being then and there a registered physician, and being without a license from the State Board of Health of the State of Missouri authorizing him, the said G. W. Jones, to practice medicine or surgery in the State of Missouri, did then and there willfully, unlawfully and wrongfully practice medicine and surgery, and did attempt to treat the sick and persons afflicted with bodily infirmities, and in particular did attempt to treat Mrs. I. U. Gordon at the time and place aforesaid, the said Mrs. I. U. Gordon being then and there sick and afflicted with bodily infirmities, by the prescription, dispensation and administration of medicine, and by the use of surgical instruments and operations.

"Contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

The provisions of Section 9988, R. S. Missouri, 1939 (Section 9988, Mo. R. S. A.), applicable to this case are as follows:

"Any person practicing medicine or surgery in this State, and any person attempting to treat the sick or others afflicted with bodily or mental infirmities . . . without a license from the State Board of Health . . . shall be deemed guilty of a misdemeanor, and punished by a fine of not less than fifty dollars nor more than five hundred dollars, or by imprisonment in the county jail for a period of not less than thirty days nor more than one year, or by both such fine and imprisonment for each and every offense; and treating each patient shall be regarded as a separate offense. Upon receiving information that any provision of this section has been or is being violated the secretary of the State Board of Health shall investigate the matter and upon probable cause appearing, shall, under the direction of the board, file a complaint with the prosecuting or circuit attorney in the county or city where the alleged offense occurred. . . . ."

Comparing the information with the statute it will be observed that the former follows substantially the phraseology of the latter in charging the crime. "This is sufficient to constitute a valid charge where, as here, the statute describes the entire offense by setting out the facts constituting it." [State v. Ferris, 16 S. W. (2d) 96; State v. Stark, 148 S. W. (2d) 82.] This having been done, it was unnecessary, in informing the defendant of the nature of the charge against him, to name or describe the kind of surgical instrument or instruments used, or the kind of medicine or medicines prescribed, to enable the defendant to properly prepare his defense. The same nicety is not required in drawing information charging misdemeanors as is required in charging common-law felonies. [State v. Newman, 152 Mo. App. 144.] "The rule of the common law was that charges of crime should be certain to every intent without any intendment to the contrary. This is no longer the rule in this jurisdiction, especially in regard to statutory offenses. Allegations of certainty to a common intent or reasonable certainty are, in such cases, all that are required. By this is meant such particularity in the allegations that the identity of the offense may be determined from the face of the charge, that the accused may be enabled to know what he has to meet that he may prepare his defense and authorize a conviction or an acquittal to be pleaded in bar to another prosecution for the same offense. . . ." [State v. Ferris, supra; State v. Maher, 124 S. W. (2d) 679, l. c. 683, 232 Mo. App. 998.] The information in the case at bar meets the necessary requirements.

Defendant further insists that the motion to quash the information should have been sustained for the reason "that the prosecuting attorney violated Section 9118, R. S. Mo., 1929 (now Section 9988, R. S. Mo., 1939), by making the complaint of Mrs. I. U. Gordon and her husband, I. U. Gordon, complaining witnesses, the basis of the information, which he personally drew without legal authority and upon which the defendant was tried, . . ." He proceeds on the theory that said section creating the offense prescribes the sole method by which prosecutions may be instituted. This position is untenable. It is true that part of said section heretofore quoted contains a method of instituting prosecutions. This provision was inserted in said section by the Legislature in 1923, obviously for the purpose of requiring the State Board of Health (a state agency closely identified with the practice of medicine and surgery and thereby in a position to learn of violations of this particular statute, which would perhaps never reach the prosecuting attorney) to co-operate with prosecuting attorneys by giving information and filing complaints on these particular infractions of the law. It was for the purpose of assisting prosecuting officials rather than placing a limitation, restriction or check on such officials. It merely placed a mandatory duty upon the State Board of Health and its secretary without limiting in any way the general powers of such officials under

the law. The court did not err in overruling defendant's motion to quash the information.

Defendant assigns as error the giving of Instruction "B" on the part of the State, for the reason, in substance, that it is not warranted under the charge in the information and highly prejudicial and for the further reason he did not defend on the ground that he was a licensed chiropractor. Instruction "B" is as follows:

"B. You are further instructed that the practice of Chiropractic is defined by the laws of the State of Missouri as being the art of palpitating and adjusting by hand the movable articulations of the human spinal column for correction of the cause of abnormalities and deformities of the body, and a license to practice Chiropractic does not authorize the holder of said license to treat the sick by the use of operative surgery or by the administration or prescription of any drug or medicine."

It was stipulated in the course of the State's evidence that defendant was a Chiropractor. He testified as to the equipment in his office and briefly as to his method of treatment. He also testified as to having examined Mrs. I. U. Gordon, first placing her on a table such as all chiropractors use. Defendant's direct testimony is, in part, as follows:

"I had treated the little son of Mrs. Moore, a sister of Mrs. I. U. Gordon, before she came to me. Mrs. Moore knew that I was a Chiropractor only and Mrs. I. U. Gordon came to me through her. I had my diploma and license on the west wall of my private office and a sign 'Doctor Jones, Chiropractor', just outside the door; each patient coming into my office could plainly see and read these signs."

It was entirely proper, in view of the evidence, for the court to define the practice of Chiropractic and to advise the jury that a license to do so would not justify the practice of medicine and surgery. There is nothing in the instruction that could have tended to prejudice the jury against the defendant.

It is also contended that the court erred in not giving Instruction No. 12 requested by defendant. Said instruction reads as follows:

"The Court instructs the jury that if you find and believe from the evidence in this case that the medicines furnished by the defendant to the complaining witness were such medicines as are generally used by the public without the prescription, dispensation and administration by persons licensed under the law of the State of Missouri to practice medicine and surgery, you will find the defendant not guilty."

It is sufficient to say that this instruction is not the law and was properly refused.

Defendant insists "that the trial court erred in permitting Doctor Robert Williams to testify that he examined the complaining witness, Mrs. I. U. Gordon, after she had visited Dr. G. W. Jones, and that the examination showed clots of blood and strips of tissue which were

evidence that the complaining witness had undergone a miscarriage or an abortion over the objection of the defendant, and to leave the matter in such a prejudicial condition that the inference would be given to the jury, and the jury might be entitled to presume that the miscarriage or abortion had been committed by Dr. G. W. Jones.''

It is the general rule that evidence of other crimes independent of that for which defendant is on trial is inadmissible, but, ''the general rule does not apply where the evidence of another crime tends directly to prove the guilt of the crime charged. Evidence which is relevant is not rendered inadmissible because it tends to prove him guilty of some other crime.'' [State v. Flores, 332 Mo. 74, 55 S. W. (2d) 953; State v. Krebs, 106 S. W. (2d) 428; State v. Patterson, 149 S. W. (2d) 332.] Therefore, it may be said as stated in Wharton's Criminal Evidence (11 Ed.), page 487, section 345:

''. . . if the other crime and the crime charged are so linked together in point of time or circumstances that one cannot be fully shown without proving the other, regardless of whether the crime incidentally shown is of the same or a different character from the one on trial, the general rule of exclusion does not apply. . . . if evidence is competent, material and relevant to the issue on trial it is not rendered inadmissible merely because it may show that the defendant is guilty of another crime.''

Defendant further complains that the court erred in refusing to give his peremptory instruction. It appears from the evidence that defendant represented himself to be an ''M. D. Doctor''; that he made an examination of Mrs. I. U. Gordon and diagnosed her ailment; that he prescribed medicine for her and used a surgical instrument upon her person. At the beginning of the treatment she was able to call at his office, but her condition grew worse and subsequently the defendant called several times at her home. There was ample substantial evidence, if true, to support the charge, and the court did not err in refusing to give the instruction.

It is finally contended that the court erred in overruling defendant's motion for a new trial based on the ground of newly-discovered testimony. We find from the record before us that the verdict of the jury was returned on June 15, 1940; that on the 19th day of June, 1940, defendant filed a motion for a new trial, and thereafter, on the 30th day of August, 1940, he filed in said court a motion for a new trial by reason of newly-discovered evidence. The first motion was not based on the ground of newly-discovered evidence as was the second one, which was filed more than two months after the verdict of the jury was returned. Section 4125, Revised Statutes of Missouri, 1939 (Section 4125, Mo. R. S. A.), reads as follows:

Sec. 4125. Motion for New Trial. The motion for a new trial shall be in writing and must set forth in detail and with particularity in specially numbered paragraphs the specific grounds or causes therefor. Such motion shall be filed before judgment and within four days after

the return of the verdict: *Provided,* on the application of defendant, the court may extend the time for filing such motion for the period of thirty (30) days: *Provided Further,* the court shall have no power to make another or further extention of the time for filing said motion. (R. S. 1929, Sec. 3735, Reenacted Laws 1939, p. 358.)

A supplemental motion for new trial filed more than thirty days after the rendition of the verdict cannot be considered. Neither can a motion for a new trial be amended after time allowed by law for filing it has expired. [State v. LaBreyere, 64 S. W. (2d) 117, 333 Mo. 1205; State v. Emry, 18 S. W. (2d) 10.] The record fails to show that appellant made application to the trial court for an extention of time in which to file his motion for a new trial. Neither does it show that the court made an order extending the time. If an extention of time had been granted it could not have exceeded thirty days from the date the verdict was rendered. In this situation the trial court was without jurisdiction to entertain the motion for a new trial since it was not timely filed. [State v. Brown, 98 S. W. (2d) 777, 339 Mo. 1014.]

Nevertheless, we have examined the affidavit in support of the motion which appears in the Bill of Exceptions and find that it contains little more than cumulative and impeachment testimony; and, had the motion been timely filed we could not convict the court of error in overruling same.

Several other assignments charging error were made by the defendant, but they are not embodied in his points and authorities or the argument. However, we have examined each assignment carefully, together with the whole record including the Bill of Exceptions and find nothing therein that, in our judgment, would justify reversal. It is true, the punishment meeted out to the defendant is the maximum provided by the statute, but we cannot say, in view of the record, that the verdict was the result of passion and prejudice.

The judgment of the trial court is accordingly affirmed. *Blair, P. J.,* and *Smith, J.,* concur.