**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert Richard EVANS,
Defendant-Appellant.**

**No. 37527.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 21, 1976.

Darryl L. Hicks, Warrenton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Jefferson City, James G. Gregory, Pros. Atty., Montgomery City, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant was convicted of burglary in the second degree and stealing, and sentenced to concurrent prison terms of five and three years respectively. We affirm the judgment.

On appeal, defendant contends that there was insufficient evidence of probative value to support his conviction. In determining whether a submissible case was made, we view the evidence most favorable to the state and consider favorable inferences reasonably to be drawn from this evidence, rejecting any evidence to the contrary. *State v. Gamache,* 519 S.W.2d 34, 39[1] (Mo. App.1975).

On August 7, 1974, the Union Electric substation near New Florence in Montgomery County, Missouri was burglarized. Copper wire in the substation was stolen and later sold as scrap to the Becker Metal Company in St. Louis. Defendant Evans was not physically present at the time of the burglary and the theft of the wire. His conviction rested upon his aiding and abetting the commission of the offenses. Prior to the offense, on Friday, August 2, 1974, Larry Peery, one of the persons who actual-

ly participated in the burglary and stealing, together with defendant, went to the Union Electric substation for the purported purpose of looking for employment. Defendant told Peery that he had a key to the substation which he had obtained, while working for L. E. Meyers, and they discussed taking copper or getting copper wire. The defendant informed Peery that he could get into the place using this key. On the night of August 6, 1974, Peery and two of the defendant's sons went to defendant's house and obtained the key. They used the defendant's truck to go to the substation and there entered with the key and took the wire which they found there at that time. They then went back to the defendant's house and one of the sons returned the key. From there they proceeded to St. Louis where the copper was sold to Becker Metals Corp. Peery received $312.00, each of the two sons received the same amount, and the defendant told Peery that he had received $312.00 from the proceeds of the check. According to Peery, the defendant had participated in discussions with Peery and his two sons concerning the use of the key to obtain entry to Union Electric's substation for the purpose of getting the wire. At that time it was discussed as to how the money was going to be divided and it was decided that it would be divided into four equal parts, one part for the defendant, one part each for each of his sons, and one part for Peery. A search was made of defendant's premises and a check stub from Becker Metals in the amount of $1,237.99 was found there. Wood from the spools of stolen copper was found in the defendant's pickup truck.

"All persons who participate in the commission of an offense are principals and the act of one is the act of all; all persons who act together with a common intent and purpose are equally responsible therefor, and a person who aids and abets the commission of a criminal offense is guilty as a principal. Evidence sufficient to justify the jury in finding that the defendant did in any way aid, abet or encourage another in the commission of an offense is sufficient to support a conviction. Furthermore, while evidence that an accused had an opportunity to commit an offense which merely raises a suspicion is insufficient to sustain a conviction, yet any evidence showing any form of affirmative participation is sufficient. Proof of conduct before, during or after the offense are circumstances from which participation in the offense may be inferred. Of course, a submissible case may be made on circumstantial evidence. But to warrant a conviction based on such evidence the facts and circumstances must (a) be consistent with each other, (b) be consistent with the hypothesis of guilt, (c) be inconsistent with innocence, and (d) point clearly to guilt as to exclude every reasonable hypothesis of innocence." (Citations omitted) *State v. Gamache, supra* at 39[2–8].

It is not necessary that a conspiracy need be shown nor is it necessary that actual physical presence at the commission of the crime be proven in order to support a conviction. Furthermore, it is not required that the state prove that the defendant personally did all the things which make up the elements of the crime. *State v. Lemon,* 504 S.W.2d 676, 683[10–12] (Mo.App.1973).

██ Defendant participated in the planning of the crime. He supplied the key and the truck to carry it out, and according to believable testimony he received one-fourth of the proceeds. Such activity was sufficient to convict him as a principal in the commission of the crimes of burglary and stealing. Defendant contends that the evidence presented at the trial to support his conviction was uncorroborated testimony of Peery, the accomplice, and that it was so lacking in probative value as to be insubstantial. A correct statement of the rule upon which defendant relies is: "A conviction may be had on the uncorroborated evidence of an accomplice unless such testimony is so lacking in probative force as not to amount to substantial evidence." *State v. Powell,* 433 S.W.2d 33, 34[2] (Mo.1968). Peery's testimony was not self-destructive so as to rob it of all probative force, nor was it inherently suspect or incredible. Furthermore, portions of his testimony

were corroborated by other witnesses. The determination of the credibility of a witness is a matter to be resolved by the jury. *State v. Martin,* 530 S.W.2d 447, 451[11] (Mo.App.1975).

The judgment is affirmed.

DOWD and CLEMENS, JJ., concur.